UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT MACHELL** | : |
| 930 Dogwood Lane | : |
| Collegeville, PA 19426 | :   **NO. 2:26-cv-3111** |
| Plaintiff, | : |
| v. | : |
| | : |
| | : |
| **THE VANGUARD GROUP, INC.** | :   **JURY TRIAL DEMANDED** |
| 100 Vanguard Blvd. | : |
| Malvern, PA 19355 | : |
| | : |
| and | : |
| | : |
| **JACQUELINE MCWILLIAMS,** | : |
| **individually** | : |
| Supervisor | : |
| The Vanguard Group, Inc. | : |
| 100 Vanguard Blvd. | : |
| Malvern, PA 19355 | : |
| | : |
| and | : |
| | : |
| **REBECCA PANZA, individually** | : |
| Head of CMS Primary | : |
| The Vanguard Group, Inc. | : |
| 100 Vanguard Blvd. | : |
| Malvern, PA 19355 | : |
| | : |
| and | : |
| | : |
| **DENA BAILEY, individually** | : |
| Human Resources Representative | : |
| The Vanguard Group, Inc. | : |
| 100 Vanguard Blvd. | : |
| Malvern, PA 19355 | : |
| | : |
| and | : |
| | : |
| **JOHN DOE ("JPP") believed to be an** | : |
| **individual named Jonathan [Last Name** | : |
| **Unknown], individually** | : |
| Senior Manager | : |
| The Vanguard Group, Inc. | : |

| 100 Vanguard Blvd.<br>Malvern, PA 19355 | : |
| Defendants. | :<br>:<br>: |

## CIVIL ACTION COMPLAINT

This action arises under the Americans with Disabilities Act and the Pennsylvania Human Relations Act. Plaintiff, a Case Manager employed by Vanguard, was diagnosed with mild cognitive impairment associated with early Alzheimer's disease that affected his processing speed but did not prevent him from performing the substantive duties of his position. After Plaintiff disclosed his disability and requested reasonable accommodations, including workflow assistance and reassignment to positions that did not rely on strict speed-based productivity metrics, Defendants nevertheless failed to meaningfully engage in the interactive process, refused to permit reassignment to other available roles, and instead continued to enforce productivity standards directly impacted by Plaintiff's disability. Defendants ultimately terminated Plaintiff's employment based on those productivity metrics.

## PARTIES

1. Plaintiff Robert Machell is an adult individual residing at 930 Dogwood Lane, Collegeville, Pennsylvania.

2. Defendant The Vanguard Group, Inc. is a corporation doing business in Pennsylvania with a principal place of business at 100 Vanguard Boulevard, Malvern, Pennsylvania.

3. Defendant Vanguard employs well over fifteen employees and is an employer within the meaning of the ADA.

4. Defendant Jacqueline McWilliams was Plaintiff's direct supervisor.

5. Defendant Rebecca Panza served as Head of CMS Primary and supervised Defendant McWilliams.

6. Defendant Dena Bailey was a Human Resources representative responsible for handling Plaintiff's accommodation requests.

7. Defendant John Doe ("JPP"), believed to be an individual named Jonathan [Last Name Unknown], was, upon information and belief, a Senior Manager and Head of CMS based in Vanguard's Charlotte, North Carolina office, and the direct supervisor of Defendant Panza, with authority over cross-department personnel decisions including employee transfers.

8. At all relevant times, the individual Defendants acted individually, jointly, and/or severally with each other and with Defendant Vanguard.

## JURISDICTION AND VENUE

9. This action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA").

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

13. Plaintiff received a Notice of Right to Sue and has filed this action within ninety (90) days of receipt of that Notice (See Exh. A).

14. Plaintiff has satisfied all administrative prerequisites to bringing this action.

## DECISIONMAKERS AND RESPONSIBILITY

15. Defendant McWilliams supervised Plaintiff's day-to-day work and was responsible for implementing Vanguard's productivity standards and administering Plaintiff's Performance Improvement Plan.

16. Defendant Panza, as Head of CMS Primary, had authority over departmental productivity metrics and personnel matters and, after learning of Plaintiff's disability, permitted the continued enforcement of productivity standards that conflicted with Plaintiff's known limitations and participated in discussions and recommendations regarding reassignment and Plaintiff's continued employment.

17. Defendant Bailey, as Human Resources representative, exercised authority over Plaintiff's accommodation requests and decisions regarding reassignment and termination.

18. Defendant Bailey denied Plaintiff's requests for reassignment and additional accommodations, informed Plaintiff that Defendants were "not considering a move to another role," and ultimately communicated and effectuated Plaintiff's termination.

19. Defendant McWilliams supervised Plaintiff's day-to-day work and, after learning of Plaintiff's disability, continued to enforce the Performance Improvement Plan and productivity standards without modification and communicated to Plaintiff that his transfer request had been denied.

20. Defendants McWilliams, Panza, Bailey, and JPP acted individually, jointly, and/or severally in denying Plaintiff accommodations, refusing reassignment, continuing enforcement of disability-impacted productivity standards, extending and maintaining Plaintiff on the Performance Improvement Plan, and causing Plaintiff's termination.

21. Defendants McWilliams, Panza, Bailey, and JPP each possessed authority and influence over Plaintiff's continued employment, accommodation requests, reassignment opportunities, productivity expectations, and/or Performance Improvement Plan status, and their actions and recommendations caused and/or substantially contributed to the decision to terminate Plaintiff.

22. Defendants McWilliams, Panza, Bailey, and JPP, acting individually, jointly, and/or severally, failed to reasonably accommodate Plaintiff's disability, denied reassignment opportunities, maintained productivity standards they knew conflicted with Plaintiff's disability-related limitations, and caused Plaintiff's termination.

## OPERATIVE FACTS

23. Plaintiff began working for Vanguard in approximately March 2022 as a Case Manager in the CMS Department.

24. Plaintiff earned approximately $66,000 annually.

25. Plaintiff consistently performed his job duties competently and maintained strong ratings in customer satisfaction and accuracy.

26. In or around May 2025, Plaintiff was diagnosed with mild cognitive impairment associated with early Alzheimer's disease.

27. This condition substantially limits major life activities including thinking, concentrating, and processing information.

28. The condition also affects executive functioning and processing speed.

29. Plaintiff's physician determined that Plaintiff could continue performing the essential functions of his position with reasonable accommodations.

30. Those accommodations included reduced case volume, workflow assistance, and reassignment to positions not dependent on strict speed-based productivity metrics.

31. Vanguard evaluated case managers through a productivity measure known as Case Handle Rate ("CHR").

32. CHR required employees to process approximately 3.0 cases per hour.

33. The CHR metric emphasized speed rather than quality of work.

34. Despite Plaintiff's strong accuracy and customer satisfaction ratings, the CHR metric placed him at a disadvantage due to his disability-related processing limitations.

35. On or about August 20, 2025, Defendants placed Plaintiff on a Performance Improvement Plan ("PIP").

36. The PIP was based primarily on Plaintiff's CHR metric.

37. At the time the PIP was issued, Plaintiff was averaging approximately half the required rate.

38. The PIP focused primarily on increasing Plaintiff's productivity speed.

39. On or about September 15, 2025, Plaintiff notified Vanguard that he had a medical condition affecting his executive functioning.

40. Plaintiff provided medical documentation supporting his diagnosis.

41. Plaintiff formally requested reasonable accommodations.

42. Plaintiff requested reduced case volume, workflow assistance, structured job coaching, and reassignment to another role.

43. Prior to submitting his ADA documentation, Plaintiff had informal access to a peer mentor for assistance.

44. After Plaintiff disclosed his disability, Vanguard merely formalized that arrangement.

45. This measure did not address the primary limitation caused by Plaintiff's disability.

46. Plaintiff requested a structured job coach or workflow analysis to identify inefficiencies.

47. Vanguard informed Plaintiff that such a position "did not exist."

48. Vanguard reduced Plaintiff's CHR requirement from 3.0 to 2.0 cases per hour and extended the PIP.

49. Even with this modification, the PIP remained focused on speed-based productivity metrics.

50. Although Defendants reduced Plaintiff's CHR requirement from approximately 3.0 to 2.0 cases per hour after learning of Plaintiff's disability, Defendants nevertheless continued to evaluate Plaintiff primarily through speed-based productivity metrics directly impacted by Plaintiff's disability, maintained Plaintiff on the Performance Improvement Plan, denied reassignment requests, and ultimately relied upon Plaintiff's disability-impacted productivity metrics and PIP status to justify termination.

51. Plaintiff requested reassignment to other positions within Vanguard for which he was qualified.

52. Vanguard maintains numerous departments that do not rely on strict productivity metrics.

53. Plaintiff was qualified for multiple such positions.

54. Defendant McWilliams acknowledged that Plaintiff was a strong candidate for transfer to another department and communicated with Plaintiff regarding reassignment efforts, yet Defendants nevertheless refused to permit reassignment and continued enforcing performance standards that conflicted with Plaintiff's disability.

55. Defendant Panza advocated for and participated in reassignment efforts concerning Plaintiff's potential transfer, yet Defendants nevertheless refused reassignment and maintained Plaintiff on the Performance Improvement Plan.

56. Upon information and belief, Defendant JPP also participated in reassignment-related communications concerning Plaintiff.

57. Despite these discussions, Defendants ultimately refused to permit the transfer.

58. Plaintiff requested reassignment as a reasonable accommodation, including to positions for which he was qualified.

59. Defendant Bailey expressly refused to consider reassignment, stating that Defendants were "not considering a move to another role."

60. Defendant Bailey further limited Plaintiff to applying through competitive postings, despite knowing that Plaintiff's PIP status would prevent him from being selected for those roles.

61. Defendants informed Plaintiff that he could not transfer because he was on a Performance Improvement Plan.

62. Defendants continued to rely on Plaintiff's PIP status, despite knowing that the performance deficiencies identified therein were directly related to his disability, and used that status as a basis to deny reassignment and continued employment.

63. As a result, Defendants used performance deficiencies directly tied to Plaintiff's disability as a basis to block reassignment.

64. Plaintiff continued to request reassignment and additional accommodation.

65. On or about November 7, 2025, Plaintiff again requested reasonable accommodation, including reassignment to a position better aligned with his strengths, reconsideration of transfer opportunities, and modification of productivity expectations to account for upcoming departmental metric changes emphasizing customer satisfaction rather than speed-based productivity.

66. On or about November 19, 2025, Plaintiff again requested reasonable accommodation, including HR-facilitated reassignment to another role, assistance overcoming barriers created by his PIP status, and additional consideration of positions involving fewer speed and multi-system processing demands.

67. Defendants instead refused Plaintiff's requests for reassignment and alternative accommodations, informed Plaintiff that Defendants were "not considering a move to another role," and continued enforcing productivity standards directly impacted by Plaintiff's disability.

68. On December 9, 2025, Defendants terminated Plaintiff's employment.

69. Defendant Bailey communicated and effectuated Plaintiff's termination as part of the collective decision making process described herein.

70. Defendants stated that the termination was due to failure to meet productivity metrics.

71. Those metrics were directly impacted by Plaintiff's disability.

72. At or around the time of Plaintiff's termination, Defendants were transitioning the department away from strict case-handling metrics and toward customer satisfaction and quality-focused metrics that aligned more closely with Plaintiff's demonstrated strengths.

73. Defendants refused accommodations and reassignment that would have allowed Plaintiff to remain employed.

74. As a result of Defendants' conduct, Plaintiff suffered emotional distress including anxiety, sleep disturbance, irritability, cognitive stress, strain on family relationships, and financial hardship, and required medical treatment including prescription medication.

### COUNT I
### Violation of the ADA- Disability Discrimination
*Against Defendant The Vanguard Group, Inc.*

75. Plaintiff incorporates the preceding paragraphs.

76. Plaintiff was a qualified individual with a disability within the meaning of the ADA.

77. Plaintiff was capable of performing the essential functions of his job with reasonable accommodation.

78. Defendant The Vanguard Group, Inc. was aware of Plaintiff's disability.

79. Defendant The Vanguard Group, Inc. terminated Plaintiff because of his disability.

80. The conduct of Defendant The Vanguard Group, Inc. constitutes unlawful discrimination in violation of the ADA.

## COUNT II
### ADA-Failure to Accommodate
*Against Defendant The Vanguard Group, Inc.*

81. Plaintiff incorporates the preceding paragraphs.

82. Plaintiff requested reasonable accommodations for his disability.

83. Defendant The Vanguard Group, Inc. failed to engage in a good-faith interactive process.

84. Defendant The Vanguard Group, Inc. refused reasonable accommodations including workflow assistance and reassignment to available positions.

85. Defendant The Vanguard Group, Inc. thereby violated the ADA.

## COUNT III
### ADA-Retaliation
*Against Defendant The Vanguard Group, Inc.*

86. Plaintiff incorporates the preceding paragraphs.

87. Plaintiff engaged in protected activity by repeatedly requesting reasonable accommodations for his disability, including requests made in September 2025, November 7, 2025, and November 19, 2025.

88. Within days and/or weeks of Plaintiff's renewed accommodation requests in November 2025, and following Defendants' refusal to provide reassignment and additional accommodations, Defendants terminated Plaintiff's employment.

## COUNT IV
### Aiding and Abetting Discrimination- Pennsylvania Human Relations Act

*Against Defendants McWilliams, Panza, JPP and Bailey  (43 P.S. § 955(e))*

89. Plaintiff incorporates the preceding paragraphs.

90. The Pennsylvania Human Relations Act prohibits individuals from aiding, abetting, inciting, compelling, or coercing unlawful discriminatory practices.

91. Defendants Jacqueline McWilliams, Rebecca Panza, JPP and Dena Bailey, had supervisory authority over Plaintiff and acted individually, jointly, and/or severally to deny Plaintiff accommodations, refuse reassignment, continue enforcement of disability-impacted productivity standards, maintain Plaintiff on the Performance Improvement Plan, and cause Plaintiff's termination.

92. These Defendants participated in, directly engaged in, and/or substantially contributed to the denial of accommodations, refusal of reassignment, continued enforcement of disability-impacted productivity metrics, and the decision to terminate Plaintiff.

93. Each Defendant had actual knowledge of Plaintiff's disability and his accommodation requests and nevertheless failed to take action to prevent the discriminatory conduct.

94. These Defendants further participated in the decision to terminate Plaintiff.

95. By engaging in this conduct, Defendants McWilliams, Panza, JPP and Bailey, aided and abetted the discriminatory practices of Defendant The Vanguard Group, Inc. in violation of the PHRA.

**COUNT V**
**Disability Discrimination- Pennsylvania Human Relations Act**
*Against Defendant The Vanguard Group, Inc.*

96. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

97. The Pennsylvania Human Relations Act prohibits employers from discriminating against employees on the basis of disability.

98. Plaintiff is a person with a disability within the meaning of the PHRA.

99. Plaintiff was capable of performing the essential functions of his position with reasonable accommodation.

100. Defendant The Vanguard Group, Inc. was aware of Plaintiff's disability and his request for reasonable accommodation.

101. Despite this knowledge, Defendant Vanguard failed to reasonably accommodate Plaintiff's disability and instead maintained productivity standards that conflicted with Plaintiff's known medical limitations.

102. Defendant Vanguard further refused to permit reassignment to available positions that would have allowed Plaintiff to continue working.

103. Defendant Vanguard ultimately terminated Plaintiff's employment because of his disability and because he requested reasonable accommodations.

104. The conduct of Defendant Vanguard constitutes unlawful discrimination in violation of the PHRA.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants, individually, jointly and/or severally, in an amount in excess of seventy-five thousand dollars ($75,000.00), including:

a. Enter judgment in favor of Plaintiff and against Defendants;

b.  Award back pay and lost benefits;

c.  Award front pay;

d.  Award compensatory damages;

e.  Award punitive damages;

f.  Award attorney's fees and costs;

g.  Award pre- and post-judgment interest;

h.  Grant such other relief as this Court deems just and proper.


**WEISBERG LAW**


*/s/ David A. Berlin, Esq.*
David A. Berlin, Esq.
Matthew B. Weisberg, Esq.
Gary Schafkopf, Esq.
Lisa M. Claire, Esq.
Attorneys for Plaintiffs